UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

MICHAEL HICE,                      )
                                   )
    Claimant,                      )
                                   )
vs.                                )    Case No. CV-09-S-2538-NE
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner, Social Security      )
Administration,                    )
                                   )
    Defendant.                     )
                                   )

**MEMORANDUM OPINION AND ORDER**

Claimant, Michael Hice, commenced this action on December 17, 2009, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly relied upon the assessment of a non-medical state agency disability examiner, and that he improperly considered the medical evidence from other treating and consultative sources. Upon review of the record, the court concludes that these contentions are without merit.

The ALJ found that claimant suffered from the severe impairments of major depressive disorder, anxiety disorder, and history of Chiari malformation.[1]  He nonetheless concluded that claimant retained the residual functional capacity to

> perform sedentary work with a sit/stand option.  He can perform occasional postural maneuvers such as balancing, stooping, kneeling, crouching and climbing ramps and stairs.  The claimant can never use ladders, ropes or scaffolds and he cannot work around hazardous machinery or unprotected heights or perform commercial driving. These limitations are based upon the claimant's alleged balance difficulties. Further, the claimant is limited to frequent fine fingering and gross handling.  These limitations are based upon the claimant's alleged

---

[1]One medical dictionary defines "Chiari's malformation" as

> a congenital anomaly in which the cerebellum and medulla oblongata, which is elongated and flattened, protrude into the spinal canal through the foramen magnum; it is classified into three types according to severity, ranging from prolapse of the cerebellar tonsils into the spinal canal without elongation of the brainstem (type I) to complete herniation of the cerebellum to form an occiptal encephalocele (type III).  It may be accompanied by hydrocephalus, spina bifida, syringomyelia, and mental defects.  The classic form is Type II, Arnold-Chiari malformation. . . .

*Dorland's Illustrated Medical Dictionary* 1090 (30th ed. 2003).

shoulder impairment. The claimant is also limited to occupations which allow brief unscheduled access to a restroom every two to two and a quarter hours during the work day and can be performed while wearing an incontinence protection pad. He is limited to routine repetitive tasks with simple work related decisions and he is limited to occasional interaction with supervisors, co-workers and the public. This is based upon his alleged depression and anxiety.[2]

The vocational expert testified that a sufficient number of jobs would exist in the national economy for a person of claimant's age, education, work experience, and residual functional capacity. Therefore, the ALJ found claimant to be not disabled.[3]

Claimant first asserts that the ALJ erred in assigning "significant weight" to the reports of the state agency consultants.[4] The state agency review records in claimant's file include a "Physical Summary" form completed by Dr. John S. Whitehead, a "Psychiatric Review Technique" form completed by Dr. Aileen McAlister, and a "Physical Residual Functional Capacity" form completed by "Disability Specialist" Wanda Aaron.

Dr. Whitehead reviewed claimant's medical records and stated that claimant should be restricted to lifting ten to twenty pounds and should have a "light" residual functional capacity.[5]

Dr. McAlister stated that claimant experienced a cognitive disorder, not

---

[2] Tr. at 20.
[3] Tr. at 26.
[4] *See* Tr. at 23.
[5] Tr. at 303.

otherwise specified, due to a Chiari malformation. He exhibited symptoms of both depressive and manic disorders, thereby warranting an indication of bipolar syndrome. Dr. McAlister indicated that, as a result of those conditions, claimant would experience moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation, each of extended duration. He would be moderately limited in the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to respond appropriately to changes in a work setting. Otherwise, claimant did not experience any significant mental limitations. In summary, Dr. McAlister provided the following functional capacity assessment:

>    A.) Capable of understanding and remembering simple instructions.

>    B.) Capable of performing simple tasks over an 8hr work day

with routine breaks.

      C.)   Capable of interacting appropriately with coworkers, supervisors, and general public.

      D.)   Changes in the work place should be introduced slowly. . . .[6]

Finally, Ms. Aaron indicated that claimant could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and perform unlimited pushing and pulling movements. He could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but he could never climb ladders, ropes, or scaffolds. He had no manipulative, visual, or communicative limitations. He should avoid all exposure to hazards such as machinery, heights, and driving, and he should avoid concentrated exposure to extreme heat; otherwise, he had no environmental limitations.[7]

Claimant asserts that the ALJ erroneously relied upon Ms. Aaron's assessment to determine claimant's residual functional capacity, because Ms. Aaron is not a medical professional, and her opinion is not consistent with the opinions of actual treating and consultative medical providers. The record simply does not support claimant's assertions. First of all, the ALJ considered the opinions of *all* the state

---

[6]Tr. at 304-20.
[7]Tr. at 322-29.

agency consultants, including Dr. McAlister and Dr. Whitehead, both of whom are physicians. The opinions of state agency physicians are entitled to substantial consideration. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) & 416.927(f)(2)(i) (stating that, while the ALJ is not bound by the findings of a State Agency physician, the ALJ should consider such a physician to be both "highly qualified" and an "expert" in Social Security disability evaluation). *See also Oldham v. Schweiker,* 660 F.2d 1078, 1084 (5th Cir. 1981) ("The Secretary was justified in accepting the opinion of Dr. Gordon, a qualified reviewing physician, that was supported by the evidence, and in rejecting the conclusory statement of Dr. Harris, a treating physician, that was contrary to the evidence."). Furthermore, it is apparent that the ALJ did not derive his residual functional capacity finding solely from Ms. Aaron's assessment, as the ALJ's assessment is significantly more restrictive than Ms. Aaron's. Accordingly, and in light of the other medical evidence of record supporting claimant's non-disability status, the court concludes the ALJ did not err in evaluating Ms. Aaron's assessment.

Claimant also argues that the ALJ improperly considered the reports of other treating and examining medical providers. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion

was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

In addition to the assessments of the state agency consultants, the ALJ also relied upon a statement from Dr. Piotr Zieba, claimant's treating psychiatrist, dated

April 27, 2006. Dr. Zieba stated:

> The patient has been diagnosed with depressive disorder. In the meantime he was tried on many medications. The patient also reports anxiety and distractibility problems, but his symptoms are very nonspecific from a psychiatric standpoint, and he claims not to respond well to medication. The patient, from a psychiatric standpoint, is not disabled. He is able to engage in any gainful employment but, of course, is limited by his level of motivation and educational level. If he has any restrictions, they may be related to neurological problems that the patient reportedly has, as he was telling me that he suffered from underlying seizure disorder. However, from the psychiatric standpoint, the patient is competent and employable.[8]

The ALJ gave Dr. Zieba's opinion "considerable weight," and concluded that it "strongly suggests the claimant's alleged mental problems are not as severe as the claimant contends."[9] The ALJ based this decision partially upon the consistency of Dr. Zieba's opinion with claimant's described daily activities. The ALJ certainly was entitled to give considerable weight to a treating physician's opinion, especially when that opinion was consistent with other evidence of record.

It was not error, as claimant suggests, for the ALJ to assign greater weight to Dr. Zieba's opinion than he assigned to the opinion of Dr. John G. Rogers, the psychological consultative examiner. Dr. Rogers examined claimant on June 13, 2006, and assessed the following: (1) depressive order and cognitive disorder, not otherwise specified, due to the Chiari malformation; (2) personality changes due to

---

[8] Tr. at 293.
[9] Tr. at 23.

8

the Chiari malformation; (3) thyroid problems, headaches, dizziness, seizures, nightmares, insomnia, feelings of tension and panic, easy fatigueability, loss of appetite, tremors and daily pain; (4) psychosocial stress stemming from his difficulties in relationship to his occupational problems; and (5) a GAF score of 50, indicating that serious symptoms are present, and that the individual manifests serious difficulty in social, occupational, or school settings. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision, 4th ed. 2000). Dr. Rogers also stated that, while claimant's mental impairments were "severe" and it was "doubtful" that claimant would be able to manage his own financial affairs, he should nonetheless be able to perform most activities of daily living. Finally, Dr. Rogers stated that claimant's ability to understand, remember, and carry out instructions and respond appropriately to supervision, co-workers and work pressures in a work setting would be "severely impaired."[10]

The ALJ gave Dr. Rogers' assessment, including the GAF score, "no weight as it is not supported by his own report and conflicts with the remaining evidence including the opinion of the claimant's psychiatrist that the claimant['s] problem was motivation."[11]  Furthermore, the ALJ noted that Dr. Rogers' assessment was

---

[10]Tr. at 296-302.
[11]Tr. at 23.

inconsistent with his own clinical observations, including claimant's timely arrival, appropriate appearance, alert facial expressions, normal speech and conversation, and full orientation as to time, place, and person. All of these conclusions are supported by substantial evidence of record, and are sufficient justifications for the ALJ's decision to afford more weight to the opinions of treating physician Dr. Zieba and state agency consultant Dr. McAlister, than to the opinion of consultative examiner Dr. Rogers.

The ALJ also properly evaluated the medical opinion evidence as it relates to claimant's physical impairments.

Dr. Richard Hull, claimant's treating neurologist, completed a Physical Capacities Evaluation form on August 14, 2006. He stated that claimant could sit for an entire eight-hour workday, but he could not stand or walk at all. Claimant could occasionally lift up to twenty pounds and carry up to ten pounds. He could use his hand for all repetitive action, except for fine manipulation with his left hand. However, he could not use his feet for any repetitive movements, such as operating foot controls. Claimant could occasionally bend, crawl, and reach above his shoulder, but he could never squat or climb. He was totally restricted from working around unprotected heights, moving machinery, temperature and humidity changes, automotive equipment, and exposure to dust, fumes, and gases. Dr. Hull stated that

the indicated limitations were due to uncontrolled seizure disorder, syringomyelia, and Arnold-Chiari malformation.[12] Dr. Hull also checked "yes" boxes to indicate that claimant could be expected to miss in excess of 25-30 days of work per year as a result of his impairments, and that claimant would experience symptoms, on a chronic basis, that would cause distraction from job tasks or result in a failure to complete job tasks in a timely manner for a total of at least one or more hours during a typical eight-hour workday. Finally, Dr. Hull stated that claimant "should be considered medically disabled."[13]

The ALJ afforded only little weight to Dr. Hull's opinion as it "is not supported by the objective evidence and is inconsistent with the evidence as a whole."[14] More specifically, the ALJ pointed out that Dr. Hull's limitations on claimant's ability to walk were inconsistent with claimant's reports of walking "all the time." Dr. Hull's restrictions on claimant's ability to tolerate dust, fumes, and gases were inconsistent with claimant's smoking habit. Furthermore, contrary to Dr. Hull's suggestion, claimant's seizures and Chiari malformation were well controlled when claimant was compliant with his medication, and he had not had a seizure for fifteen months prior to the administrative hearing. The ALJ also refused to accept either Dr. Hull's

---

[12]Tr. at 332.
[13]Tr. at 333.
[14]Tr. at 24.

speculation that claimant would be too distracted to do any regular work activity, because it was unsupported by any clinical evidence, or Dr. Hull's conclusory statement that claimant was disabled, because the determination of disability is a decision reserved to the Commissioner. All of Dr. Hull's conclusions were supported by substantial evidence and in accordance with applicable law.

The ALJ also considered the June 13, 2006 consultative report from Dr. Marlin Gill. Dr. Gill's examination did not reveal any noteworthy physical findings. Neurologically, Dr. Gill stated that claimant was "alert and oriented but is an extremely poor historian and rambles on about his problems. He seems to have difficulty staying focused on a subject. Otherwise, no unusual behaviors observed. Speech is clear and understandable. No other focal deficits identified." Dr. Gill assessed claimant with depression and anxiety, possible bipolar disorder, history of Chiari malformation of the brain, and seizure disorder. He did not make any assessment of claimant's functional abilities.[15] The ALJ afforded "considerable weight' to Dr. Gill's report, because it was based upon "objective clinical findings" and was consistent with claimant's reported daily activities, including doing household chores, caring for his own personal needs, walking up to a half mile, standing up to fifteen minutes, caring for a child, and driving with no restrictions on

---

[15]Tr. at 294-95.

his license.[16] Those conclusions were supported by substantial evidence and in accordance with applicable legal standards. Therefore, the ALJ properly considered Dr. Gill's report.

In summary, the ALJ did not err in assigning more weight to the opinions of the claimant's treating psychiatrist and the state agency psychological consultant than to the opinion of the consultative examiner. The ALJ also did not err in assigning more weight to the assessments of the consultative examiner and the state agency medical (and non-medical) consultants than to the assessments of claimant's treating physician. The ALJ's residual functional finding was supported by substantial evidence, and the ALJ correctly found that there were a significant number of jobs in the national economy that claimant could perform.

In accordance with all of the foregoing, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 26th day of October, 2010.

_____
United States District Judge

---

[16]Tr. at 22.